# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

```
UNITED STATES OF AMERICA    )
                            )
     v.                     )     CR 220-47
                            )
JAMES LAMOUNT GRAHAM,       )
                            )
     Defendant.             )
```

**ORDER**

Before the Court are Defendant's Objections to the Magistrate Judge's June 24, 2021 Report and Recommendation. Dkt No. 277. Defendant's objections take issue with the Magistrate Judge's ruling on Defendant's motion to dismiss the indictment, dkt. no. 178, and motion to suppress certain electronic surveillance, dkt. no. 184. Dkt. No. 274-1. After careful review, Defendant's Objections are **OVERRULED**, and the Magistrate Judge's Report and Recommendation is **ADOPTED** as the opinion of the Court.

**Background**

Defendant has been indicted on thirty-six alleged crimes: one count of conspiracy with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; two counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and thirty-three counts of use of a communication facility, in violation of 21 U.S.C. § 843(b). Dkt.

No. 3.  These charges stem from allegations that Defendant and others, from at least April 7, 2018, knowingly conspired to possess methamphetamine with an intent to distribute. Id.

During the Government's investigation, this Court authorized a wiretap permitting the Government to record communications to and from TT7, bearing a number ending in -0005. Dkt. No. 247-2. The wiretap was supported by a fifty-nine-page affidavit by Task Force Officer Elizabeth Strickland of the Drug Enforcement Administration ("TFO Strickland"). Id.

In her affidavit, TFO Strickland described a drug-distribution network in Telfair County, Georgia, involving several individuals, including Defendant. Id. at 5-10.  TFO Strickland described the investigation of this network, including law enforcement's use of confidential human sources, drug purchases made by the sources, recordings made by the sources, and other information obtained from the sources. Id. at 14-25.  TFO Strickland further described the use of cellular phones by participants in the distribution network, including Defendant's use of cellular phones and the use of TT7 in the distribution network. Id. at 10-12.  TFO Strickland described surveillance conducted by law enforcement, analysis of telephone records for TT7, the need for a wiretap, and a detailed description of other investigative techniques that were tried or considered during the investigation. Dkt. No. 247-2 at 25-54.  TFO Strickland requested

geo-location data on TT7, in addition to a wiretap, in order to "identify locations used by the targets of the investigation to facilitate their illegal drug activities." Id. at 54. Finally, TFO Strickland explained the efforts law enforcement would take to minimize the extent of wire interceptions. Dkt. No. 247-2 at 56–58. The affidavit also included several pages in which TFO Strickland described other investigatory measures that were used, or considered and rejected, and why a Title III wiretap was necessary to obtain information in the case. Id. at 42–53.

In sum, TFO Strickland set forth detailed facts demonstrating Defendant was using TT7 in furtherance of a drug-distribution scheme, alternative investigative methods had been used or would be futile, and a wiretap of TT7 was an effective means of acquiring information about the drug distribution network. Id.

On August 5, 2020, a grand jury returned the 36-count indictment described above. Dkt. No. 3. The proceedings were conducted according to the Court's May 13, 2020 Standing Order in In re: Corona Virus/COVID-19 Pandemic and the use of Grand Jury Telecommunication Facilities, No. 1:20-mc-11 (S.D. Ga. May 13, 2020). Dkt. No. 245 at 1.

The Court's Standing Order permitted grand jurors to convene at three courthouses located in this District—Augusta, Brunswick, and Savannah—depending on the grand juror's residence. In re: Corona Virus/COVID-19, No. 1:20-mc-11. At that time, the grand

jurors participated in deliberations with one another using videoconferencing technology that allowed them to see and hear all witnesses. The grand jurors at each courthouse were "counted in establishing a quorum for that grand jury." Id.  Finally, Court Security Officers remained outside the courtrooms in which grand jurors convened to ensure no unauthorized person entered the deliberations and to ensure the grand jury deliberated in secret. Id.

Following the indictment, Defendant challenged (1) the validity of the grand jury proceedings due to the presence of the grand jury in three different courtrooms communicating via videoconference, dkt. no. 178 (motion to dismiss), and (2) the necessity of the wiretap as unsupported by sufficient facts, dkt. no. 184 (motion to suppress).  The Government filed responses to both motions. See Dkt. Nos. 218, 221.  In its response to Defendant's motion to dismiss, the Government argued "uniform physical presence in the same room" is not required for grand jury proceedings and that the proceedings were conducted in accordance with the Court's Standing Order considering the COVID-19 pandemic. Dkt. No. 218 at 5.  In its response to Defendant's motion to suppress, the Government argued TFO Strickland's affidavit demonstrated adequate probable cause and necessity, and the interceptions were appropriately minimized. Dkt. No. 221 at 4.

4

The Magistrate Judge denied both motions. In denying the motion to dismiss, the Magistrate Judge looked to the justifications for and the processes in place to protect the validity of the grand jury proceedings. He explained that "these procedures were adopted to 'protect the public health and the health of grand jurors, to reduce the size of gatherings otherwise essential to the administration of justice, and to reduce unnecessary travel.'" Dkt. 274-1 at 11 (quoting In Re: Corona Virus/COVID-19, No. 1:20-mc-11). The Magistrate Judge ruled that these procedures are consistent with the Court's supervisory powers over grand jury proceedings[1] and did not violate Federal Rule of Criminal Procedure 6 or the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 15002(b), 134 Stat. 281 (Mar. 27, 2020) ("CARES Act"). Id.

In denying the motion to suppress, the Magistrate Judge looked to TFO Strickland's 59-page affidavit in support of the wiretap. This affidavit detailed the methods used so far, the success of those methods, and other investigatory measures that could be used instead of a wiretap. Dkt. No. 247-2. This affidavit described these alternative methods and why they were insufficient to obtain the information called for in the case. Id. at 42-53. The

---

[1] See United States v. Pabian, 704 F.2d 1533, 1536 (11th Cir. 1983) (holding courts have a "supervisory power over the administration of justice to regulate the manner in which grand jury investigations are conducted.").

5

Magistrate Judge ruled that this affidavit contained sufficient facts to demonstrate the necessity of the wiretap under 18 U.S.C. § 2518. Dkt. No. 274-1 at 35.  Defendant objected to both rulings.  Dkt. No. 277.

## LEGAL AUTHORITY

Under 28 U.S.C. § 636(b)(1), the Court makes a *de novo* determination of objections to a Magistrate Judge's proposed findings and recommendations regarding the dismissal of an indictment and the suppression of evidence.

## DISCUSSION

Defendant argues in his motion to dismiss and again in his objections that the grand jury indictment should be dismissed because the proceedings were conducted in three different courthouses via videoconferencing technology, in violation of Federal Rule of Criminal Procedure 6 and Defendant's Fifth Amendment constitutional right to a valid grand jury indictment. Dkt. Nos. 178, 277.  Defendant further contends in his motion to suppress and again in his objections that evidence related to the wiretap on TT7 should be suppressed because of a lack of sufficient facts necessary to support a finding of necessity. Dkt. Nos. 184, 277.  The Court addresses each of these motions in turn.

### I.   Defendant's Motion to Dismiss the Indictment

At issue is the physical location of the grand jury proceedings on August 5, 2020.  These proceedings were conducted

via videoconferencing technology, in accordance with the Chief Judge's Standing Order in In Re Corona Virus/COVID-19, 1:20-mc-11. See Dkt. No. 245. In that order, Chief Judge Hall ordered that, due to the COVID-19 Pandemic making mass gatherings unsafe, "grand jurors who would otherwise travel into Savannah for grand jury service[ ] are authorized to convene in [the Augusta, Brunswick, and Savannah courthouses]." In Re Corona Virus/COVID-19, 1:20-mc-11. In this case, between sixteen and twenty-three grand jurors convened at the three courthouses and were connected via videoconferencing technology. Court Security Officers secured the courtrooms to prevent unauthorized access and to ensure the secrecy of the proceedings. Dkt. No. 274-1 at 11.

Defendant does not renew his CARES Act argument in his objections[2] but insists that the grand jury procedures violated Rule 6. Dkt. No. 277 at 2 (contending such a change in procedure would require an amendment to the rule itself).

---

[2] The CARES Act authorized courts to conduct certain types of criminal proceedings by videoconference, so long as various conditions were met, and the Act listed the types of criminal proceedings. § 15002(b). Grand jury proceedings were not listed. Id. Defendant argued that the Act's silence on grand jury proceedings shows that they are not allowed to be conducted by videoconference. Dkt. No. 274-1 at 12-13 (citing Defendant's argument). The Magistrate Judge noted that the criminal proceedings specifically addressed in the CARES Act are all proceedings at which a defendant has a right to appear. Id. at 14. The Magistrate Judge reasoned that since the defendant's presence is not required in grand jury proceedings, the CARES Act cannot be construed as forbidding videoconferencing technology in grand jury proceedings. Dkt. No. 274-1 at 14-15. Defendant seemingly conceded as much in his objections, stating "that distinction as to a defendant's participation may be correct as to what type of proceedings were addressed in the [CARES] Act[.]" Dkt. No. 277 at 2. It is correct.

7

To begin with, nothing in the text of Rule 6 requires that grand jurors be "present" in the same location. While Rule 6 does lay out who may be present during proceedings, it does not address whether those present must be physically together in the same space. See Fed. R. Crim. P. 6(d). To be sure, Rule 6(e)'s grand jury secrecy requirement does implicitly require the parties present at the proceedings to be present in a manner that protects the secrecy and validity of the grand jury indictment process. Id. at 6(e). The grand jury must also convene in a manner sufficient to fulfill their obligation to deliberate and determine the credibility of witnesses being questioned. Id. at 6(d) (mentioning witnesses being present at the proceedings and "deliberations and voting" at the proceeding). However, these subsections demand only that the grand jury proceedings be conducted in accordance with the secrecy, deliberation, and witness credibility determination requirements, *not* physical presence.

It is important to note that the word Defendant relies upon, "present," means different things in different contexts. A person is "present" on a phone call if he or she is on the same line as the other person, even if he or she is not physically in the same room or in a place where the other person can see him or her. So, too, can a person be "present" via videoconferencing technology, even if not in the same room as the other participants. Thus, the mere use of the word "present" does not compel the conclusion that

8

physical presence within some particular space proximity is required. Rather, the 6(e) secrecy requirements and the implied 6(d) deliberation requirement establish that proceedings must be held in a way that protects grand jury secrecy and gives grand jurors the opportunity to observe witnesses and deliberate with each other. For that reason, this Court need not decide whether grand jury proceedings via teleconference at *any* location would violate Rule 6, merely whether the instant proceedings satisfied the outlined requirements.

Moreover, even if this were a closer case, the Eleventh Circuit has made clear that it is within the Court's supervisory powers to dictate how grand jury proceedings will be conducted. See Pabian, 704 F.2d at 1536 ("[F]ederal courts have a 'supervisory power over the administration of justice to regulate the manner in which grand jury investigations are conducted.'" (quoting United States v. Serubo, 604 F.2d 807, 816 (3d Cir. 1979)). That necessarily means that courts may consider, for example, the risks a global pandemic may create when meeting in person versus meeting via videoconferencing technology and the need to keep the criminal justice system functioning despite the challenge of a deadly and lengthy pandemic.

A review of Chief Judge Hall's order makes clear that the videoconferencing technology used in this case satisfied Rule 6's requirements. In Re Corona Virus/COVID-19, 1:20-mc-11. After

9

declaring the necessity of protecting the public health and the health of grand jurors, Chief Judge Hall laid out the process for conducting grand jury proceedings. "Upon advice from the Clerk's Office of the Southern District of Georgia that suitable space and telecommunications facilities have been arranged, grand jurors who would otherwise travel into Savannah for grand jury service, are authorized to convene" in the Anthony A. Alaimo Court Facility in Brunswick, Georgia if living in the counties near Brunswick, in the Tomochichi Federal Building and U.S. Courthouse in Savannah, Georgia if living in the counties near Savannah, and in the U.S. Courthouse in Augusta, Georgia if living in the counties near Augusta. Id.  All grand jurors convening at these courthouses will be counted in establishing a quorum for that grand jury, and no more than ten grand jurors may convene at any U.S. Courthouse in the Southern District of Georgia. Id.  The order continues:

> The designated grand jury spaces in each U.S. Courthouse shall be connected using telecommunications facilities, *such that every member of the grand jury can both see and hear witnesses*.  Court Security Officers shall be posted outside the designated grand jury spaces at each U.S. Courthouse to *safeguard the grand jury against intrusion by unauthorized persons and to ensure the secrecy of the grand jury's deliberations*.

Id. at 2 (emphasis added).

Both parties stipulated that the instant proceedings were conducted in accordance with the order. Dkt. No. 245.  In light of such requirements, the Court finds the secrecy of the grand jury

10

was adequately protected and the grand jury convened in a manner sufficient to determine the credibility of witnesses while deliberating with each other.

Defendant's argument that Rule 6 must be amended to allow for videoconference proceedings misconstrues the Rule. Defendant pins this argument on Rule 6(f), which was amended in 2011 to allow for videoconferences in returning an indictment. Dkt. No. 277 at 2; Fed. R. Crim. P. 6(f). But that amendment was only necessary because the immediately preceding sentence states "[t]he grand jury – or its foreperson or deputy foreperson – must return the indictment to a magistrate judge *in open court*." Fed. R. Crim. P. 6(f) (emphasis added). Simply put: an express allowance for videoconferencing was necessary because the Rule itself could be read to require that the indictment be returned in-person. Subsection (d) has no such language. Absent that, contending that the rule must be amended to allow videoconference proceedings simply assumes the answer to the question here.

Finally, even if there had been irregularity in the underlying grand jury proceedings here, the harmless error doctrine would still uphold the indictment's validity in this case. Where a defendant alleges non-constitutional error prior to the conclusion of a trial, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt'

11

that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)). Defendant has alleged no such substantial influence or grave doubt, and this Court is hard-pressed to imagine either here.

As for Defendant's Fifth Amendment argument, the Eleventh Circuit has explained that "prejudice must be shown when dismissal is based on violations of the Constitution." Pabian, 704 F.2d at 1540. Defendant argues that the proceedings here violated his right to an unbiased grand jury indictment, but he points to no prejudice whatsoever. That being so, and since dismissal of an indictment is an "extreme sanction which should be infrequently utilized," any irregularity or technical violation of Rule 6 would be a harmless error, not a constitutional violation, under the facts of this case. Id.

**II.  Defendant's Motion to Suppress Electronic Surveillance**

Defendant next argues that the Magistrate Judge erred when he determined that TFO Strickland's affidavit demonstrated necessity sufficient to support the issuance of the wiretap. Dkt. No. 277 at 3. Defendant argues that traditional law enforcement techniques produced incriminating evidence concerning Defendant as well as six people who are willing to implicate Defendant in criminal

12

activities, so the wiretap was unnecessary. Dkt. No. 277 at 3. This argument misstates the burden for proving necessity.

The burden for establishing necessity is "not great," and the "affidavit need not . . . show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." United States v. Van Horn, 789 F.2d 1492, 1495-96 (11th Cir. 1986); United States v. Gray, 410 F.3d 338, 343 (7th Cir. 2005). A wiretap is deemed necessary even where traditional investigative techniques have uncovered evidence sufficient to incriminate the defendant but insufficient to disclose "the full extent of [the defendant's] criminal activities and his coconspirators." United States v. Perez, 661 F.3d 568, 582 (11th Cir. 2011). Further, the Government's showing must be read in a "practical and commonsense fashion," and a "district court is clothed with 'broad discretion' in its consideration of the application." United States v. Alonso, 740 F.2d 862, 868 (11th Cir. 1984) (quoting United States v. Brick, 502 F.2d 219, 224 n.14 (8th Cir. 1974)) (citation omitted).

Here, the Government met its burden in detailing its use of traditional investigative techniques while demonstrating that those techniques failed to furnish sufficient evidence to dismantle the drug trafficking organization. The Government is not prevented from carrying out its duty to enforce the law through

13

applying for wiretaps simply because traditional investigative techniques have led to some measure of success. Without more to show the lack of necessity, Defendant's argument to suppress the electronic surveillance in the wiretap must be rejected.

## CONCLUSION

For the reasons explained above, Defendant's Objections are **OVERRULED**, and the Magistrate Judge's June 24, 2021 Report and Recommendation is **ADOPTED** as the opinion of this Court as supplemented herein.

**SO ORDERED**, this 24th day of September, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA